UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   13-09232 |
| HOLLYWOOD BOULEVARD | ) | |
| CINEMA, LLC, | ) | Chapter:  11 |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

## FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

THIS MATTER COMING TO BE HEARD on for final hearing on the Motion for Entry of an Order Authorizing Use of Cash Collateral (the "Motion") filed by Hollywood Boulevard, LLC, as Debtor and Debtor-in-possession ("Debtor") on March 8, 2013; due notice of the hearing and copy of this proposed Final Order Authorizing Use of Cash Collateral ("Final Order") having been given to all entitled thereto; no objections having been made to the relief requested in the Motion; the Court having held a preliminary hearing on March 13, 2013 ("Preliminary Hearing") as provided under Section 363 of title 11 of the United States Code, 11 U.S.C. §101 et seq. (the "Code") and Rule 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Rules") and having entered an Interim Order Authorizing Use of Cash Collateral on March 13, 2013 [Docket No. 21]; no objections having been made to the relief requested in the Final Order or such objections having been overruled by the Court; and the Court, being duly advised in the premises, Debtor represents as follows:

1. Filing. On March 8, 2013 ("Filing Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Code.  Debtor is an independent movie theatre operating out of leased space located at 1001 W. 75th Street, Suite 153, Woodridge, Illinois 60517.

2. Notice.  Notice of the hearing on the Motion has been served on the following (collectively, the "Notice Parties"): (i) counsel for First Midwest Bank ("First Midwest") and the Small Business Growth Corporation ("SBGC"), (ii) the twenty largest unsecured creditors, (iii) the Internal Revenue Service and Illinois Department of Revenue, (iv) the United States Trustee, and (v) all parties requesting notice in this case.  Such notice is sufficient and complies with the requirements of Section 363 of the Code and Rules and any other applicable law.

3. First Midwest Pre-Petition Indebtedness and Security.  Debtor and First Midwest are parties to the following: (i) a Line of Credit Note in the original amount of $1,000,000; (i) a Term Note in the original amount of $1,300,000; and (iii) a Term Note in the original amount of $550,000.  The note indebtedness was secured by a blanket security interest in substantially all of the Debtor's personal property pursuant to a Continuing Security Agreement dated May 12, 2010.  First Midwest may assert a claim of approximately $1,836,594 and asserts that it has a first-priority secured interest in substantially all of Debtor's assets except for certain pieces of equipment purchased pursuant to financing leases (collectively the "Assets").

4. SBGC.  Debtor and SBGC are a party to a Loan Agreement dated March 24, 2009 pursuant to which the SBGC loaned the Debtor $1,075,000 and Debtor granted SBGC a security interest in the Assets.  The SBGC may assert a claim of approximately $730,545 and a second-priority secured

interest in the Assets.

5. IRS. The Internal Revenue Service also filed a lien against Debtor after and junior to the liens of the SBA and Midwest were filed relating to 2005 taxes owed by a separate entity, Woodgrove Theatres Inc. ("Woodgrove"). The tax lien states it is filed as "nominee, alter ego." Debtor contests any liability for the taxes of Woodgrove. Further, the value of the assets of Debtor are less than the amount of Debtor's secured debt owned to its secured, perfected creditors, First Midwest and SBA. As such, even if the IRS were ever successful in proving that Debtor had liability for taxes of Woodgrove, its claim debt would be wholly unsecured.

6. Cause. Debtor has filed its chapter 11 petition in order to restructure its business and debt to preserve the value of the Property for the benefit of all of its creditors and to adjudicate the claims of all creditors. Given the current cash flow from the property, prior to debt service, Debtor believes that it can propose and confirm a plan promptly that will retain the Property for the benefit of all of its creditors, parties in interest and holders of equity in Debtor.

In order to preserve and maintain the Property, the Monthly Expenses of utilities, maintenance, insurance and management are necessary and need to be paid.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

The Motion is hereby granted on a final basis subject to the terms and conditions set forth in this Order.

A. Cash Collateral. For purposes of this Order and subject to the reservation of rights contained herein, the term "Cash Collateral" shall mean the income generated by the operations of Debtor which is generally ticket, food and beverage revenue ("Revenues").

B. Use of Cash Collateral. Debtor is authorized (but not required) to use Cash Collateral for the period from May 1, 2013 through May 31, 2013 for the Monthly Expenses set forth on Exhibit A hereto, which sets forth the projected expenses for such period, and with respect to those Monthly Expenses, Debtor is authorized to use up to one hundred and twenty percent (120%) of the Monthly Expenses.

Starting in May 2013, and for each month thereafter during this Chapter 11 Case, Debtor shall, no later than the fifth (5th) calendar day of every month [e.g. June, 2013 budget will be submitted by May 5, 2013], file with the Court and serve upon the Notice Parties a proposed budget (a "Monthly Proposed Budget") setting forth Monthly Expenses for the following calendar month. Any party in interest shall be entitled to file an objection (a "Budget Objection") to the Monthly Proposed Budget no later than the fifteenth (15th) day of the month in which the Monthly Proposed Budget is received and shall be required to set a hearing on their Objection no later than the twenty-fifth (25th) day of each such month. If no Budget Objection(s) is timely filed and noticed for hearing, then Debtor shall be authorized to use Cash Collateral for the Monthly Proposed Budget, up to one hundred and twenty percent (120%) of the budgeted amounts, and such use shall be governed by the terms of this Order. In the event a Budget Objection is timely filed and heard, Debtor shall use Cash Collateral for the objected to month only as allowed by further Court Order.

C. Replacement Lien. As adequate protection for use of Cash Collateral generated from and after the Filing Date, to the same extent and in the same priority that First Midwest and SBA had a valid

security interest in the Assets prior to the Filing Date, First Midwest and SBA are hereby granted, retroactive to the Filing Date and without the necessity of any additional documentation or filings and as additional security for their claims against Debtor that are allowed by final order of this Court, valid, enforceable, non-avoidable, and fully perfected liens, replacement security interests in and lien upon Revenues generated from and after the Filing Date ("Post-Petition Revenues") and property that the Debtor acquires after the Filing Date generated by the Debtor's post petition operations ("Replacement Lien"). The Replacement Liens shall be enforceable in an amount equal to the aggregate post-petition diminution (if any) in the value of the interest of First Midwest and SBA in Pre-Petition Revenues and Assets as of the Filing Date (whether as a result of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise). The grant of the adequate protection provided herein is without prejudice to the right of First Midwest and/or the SBA to seek (i) additional adequate protection of its interest in the Debtor's property or (ii) to terminate or modify the automatic stay and the rights of Debtor and all parties in interest to oppose such requests.

D. Application of Payments. Payment by Debtor to First Midwest or the SBA of any amounts characterized in the Motion or the Proposed Budgets as "interest" is not an admission by Debtor or finding by the Court that either are entitled to post-petition interest payments and, and the actual application and characterization of any such payments made as either interest or principal shall be subject to: (i) a final determination by the Court; and (ii) a final order regarding the secured status of such creditors' claims under 11 U.S.C. § 506(b).

E. Reservation of Rights. Nothing contained in this Order constitutes a finding or other determination with respect to the adequacy of the protection of the interest of either First Midwest or the SBA in the collateral either had prior to the Filing Date or shall preclude either First Midwest from seeking additional or different adequate protection (as defined in Section 361 of the Bankruptcy Code) or the right of Debtor and other parties in interest to oppose such relief requested.

Nothing in this Order constitutes a finding or other determination with respect to the existence, priority, extent or validity of the security claimed by First Midwest or the SBA or the amount of their claims allowed against the Assets and/or Debtor.

E. Jurisdiction; Core Proceeding; Effectiveness. The subject of this Order is a "core" proceeding with the meaning of 28 U.S.C. § 157. This Court has jurisdiction over this proceeding of the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This Order is a binding order of the Court, and shall be binding upon and inure to the benefit of First Midwest, the SBA, and Debtor and its successors and assigns (including any successor trustee or estate representative in the Case or any subsequent case or proceeding under the Bankruptcy Code).

IT IS SO ORDERED.

Enter:

United States Bankruptcy Judge

Dated: 4/22/13

**Prepared by:**
Timothy S. McFadden
BARNES & THORNBURG LLP

Rev: 20130104_bko

1 North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Tel: (312) 357-1313
Fax: (312) 759-5646

## Hollywood Blvd Cinema LLC
## May Budget
### 2013

|  | May 13 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Sales** | |
| Admission Sales | 234,453 |
| Food & Bevarage Sales | 616,189 |
| **Total Sales** | 850,642 |
| Comps & Discounts | -11,202 |
| **Total Income** | 839,440 |
| **Cost of Goods Sold** | |
| **Direct Costs** | |
| Film Cost | 168,806 |
| Film Broker | |
| Food Cost | |
| Main Item Costs | 180,311 |
| Sauces & Condiments | 10,528 |
| **Total Food Cost** | 190,839 |
| Beverage Costs | |
| Beer Costs | 10,814 |
| Liquor Costs | 18,220 |
| Soft Drink Costs | 10,933 |
| Wine Costs | 1,113 |
| **Total Beverage Costs** | 41,080 |
| Concession Costs | 4,009 |
| Merchandise Cost | 35 |
| Employee Item Cost | 200 |
| **Total Direct Costs** | 404,969 |
| **Indirect Costs** | |
| Film Delivery | 134 |
| Beverage Consumables | 3,956 |
| Service Supplies Costs | 13,715 |
| China, Silver, and Glassware | 750 |
| Linen Service | 400 |
| Smallwares & Equipment | 1,500 |
| **Total Indirect Costs** | 20,455 |
| **Total COGS** | 425,424 |
| **Gross Profit** | 414,016 |
| **Expense** | |
| **Staffing Expense** | |
| Hollywood Blvd | 238,418 |
| Formosa Café | 18,000 |
| Executive Salaries (GHTG) | 40,500 |
| **Total Staffing Expense** | 296,918 |
| Advertising Expense | 2,500 |
| General & Administrative | |

# EXHIBIT A

# Hollywood Blvd Cinema LLC
## May Budget
### 2013

|  | May 13 |
|---|---|
| **Equipment Cost** | |
| Computer Service & Supplies | 1,115 |
| Equipment Leases | |
| Citibank (copier) | 0 |
| Total Equipment Leases | 0 |
| Equipment Repairs | 4,500 |
| **Total Equipment Cost** | 5,615 |
| **Insurance** | |
| General Liability Insurance | 2,257 |
| Life Insurance | 2,595 |
| **Total Insurance** | 4,852 |
| **Bank Service Charges** | |
| Bank Fees | 2,000 |
| Credit Card Fees & Charges | 11,967 |
| **Total Bank Service Charges** | 13,967 |
| **Interest Expense** | |
| First Midwest Bank | |
| SBA | |
| **Total Interest Expense** | |
| **Licenses and Permits** | 550 |
| **Office Supplies** | 1,580 |
| **Postage and Delivery** | 533 |
| **U.S Trustee Fees** | |
| **Travel and Entertainment** | |
| Travel | 0 |
| Automobile Expense | 250 |
| **Total Travel and Entertainment** | 250 |
| Miscellaneous | 3,717 |
| **Total General & Administrative** | 31,065 |
| | |
| **Occupancy Expense** | |
| Repairs & Maintenance | 3,500 |
| | |
| **Lease Expense** | |
| Rent | 28,768 |
| CAM Rent | 7,911 |
| Tax Rent | 7,418 |
| **Total Lease Expense** | 44,096 |
| | |
| **Utilities** | |
| Electric | 11,385 |
| Gas | 1,383 |
| Telephone / Communications | 2,350 |
| Water & Sewer | 2,182 |
| **Total Utilities** | 17,300 |

# Hollywood Blvd Cinema LLC
## May Budget
### 2013

|  | May 13 |
|---|---|
| **Other Occupancy Costs** | |
| Janitorial | |
| Janitorial Supplies | 6,130 |
| Janitorial Wages | 5,400 |
| **Total Janitorial** | 11,530 |
| | |
| Pest Control | 267 |
| Trash Removal | 1,176 |
| Security | 1,000 |
| **Total Other Occupancy Costs** | 13,974 |
| | |
| **Total Occupancy Expense** | 78,870 |
| | |
| **Total Expense** | 409,352 |
| | |
| **Net Profit** | 4,665 |